IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

BRUCE SCOTT DAVIS

CRIMINAL ACTION FILE NO.

1:16-CR-133-ELR-JKL

## FINAL REPORT AND RECOMMENDATION

This case is before the Court on Defendant Bruce Scott Davis's Motion to Suppress [Doc. 102] and Motion to Dismiss the First Superseding Criminal Indictment [Doc. 103]. For the reasons that follow, I **RECOMMEND** that both motions be **DENIED**.

## I.      Background

On April 19, 2016, a grand jury in Northern District of Georgia returned a three-count indictment against Davis. [Doc. 1.] Count One charged him with conspiracy to distribute controlled substances, namely the synthetic cannabinoids AB-FUBINACA, AKB48, and PB-22, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846. [*Id.* at 1-2.] Count Two charged him with possession of AB-FUBINACA and AKB48 with intent to distribute, in violation of 21 U.S.C. §

841(a)(1) and 841(b)(1)(C).  [*Id.* at 2.]  Count Three charged him with money laundering, in violation of 18 U.S.C. § 1957.  [*Id.* at 2-3.]

On May 1, 2017, the case went to a jury trial.  The jury found Davis not guilty on Counts One and Three but guilty on Count Two, the substantive possession charge.  [Doc. 62 (verdict form).]  With respect to Count Two, the jury verdict form directed the jury that if they found Davis guilty of possession with intent to distribute a controlled substance, the jury must select the controlled substance(s) involved.  [*Id.* at 2.]  On the form, the jury marked the line next to AKB48, indicating that Davis possessed with intent to distribute AKB48.  The jury left the line next to AB-FUBINACA blank.  [*Id.*]

Following the verdict, the parties discovered that documents that were not admitted into evidence went to the jury room and were considered by the jury during their deliberations.  (Tr. 509-10.[1])  The parties jointly moved for a new trial, which the Court granted, setting aside Davis's conviction on Count Two.  [Docs. 66, 67.]

_____

[1] In this Report and Recommendation, I refer to the trial transcript with the citation "Tr. _."  The trial transcript is available on the docket at Docs. 82 through 84.

On June 21, 2017, the grand jury returned a four-count superseding indictment against Davis.  [Doc. 71-1.]  Count One charged Davis with distribution of AKB48 on January 25, 2014; Count Two charged him with distribution of AB-FUBINACA, AKB48, and PB-22 on February 12, 2014; Count Three charged him with distribution of PB-22 on March 27, 2014; and in Count Four charged him with possession of AB-FUBINACA, AKB48, and PB-22 with intent to distribute on May 1, 2014, all in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  [*Id.*]

On December 4, 2017, Davis filed a motion to suppress evidence and a motion to dismiss the superseding indictment.  In the motion to suppress, Davis moves to suppress nearly two gigabytes of data that the government extracted following the May 2017 trial from a cache of data it had seized from five iPhones and one iPad in 2014 pursuant to search warrants.  [Doc. 102.]  Davis argues that even though the data was already in the government's possession, the government was required to obtain a new warrant to extract additional information after the May 2017 partial acquittal.  [*Id*. at 2-3.]

In his motion to dismiss, Davis moves to dismiss Counts One through Three of the superseding indictment and to dismiss the portion of Count Four that is based on AB-FUBINACA.  [Doc. 103.]  Specifically, he argues that Count Four, as it

3

relates to the alleged possession of AB-FUBINACA with intent to distribute, is barred by the Double Jeopardy Clause of the Fifth Amendment.  [*Id.* at 5-6.] Likewise, he contends that the government is collaterally estopped from prosecuting him in Count Two for the alleged distribution of AB-FUBINACA.  [*Id.* at 6-8.]  Finally, Davis argues that the distribution charges (Counts One through Three) should be dismissed because the government has no good faith basis for the delay in bringing the charges.  [*Id.* at 8-10.]

The government has responded to the motions [Docs. 110, 111], and Davis has filed a reply in support of his motion to dismiss [Doc. 112].

## II.    Motion To Suppress [102]

On May 1, 2014, law enforcement officers executed search warrants at Davis's townhouse and his mother's house, and seized numerous electronic devices.  (*See* Tr. 85-86, 133, 138-39, 183.)  On May 7, 2014, United States Magistrate Judge Justin S. Anand issued forty-five separate search warrants, one for each device to be searched.  [Doc. 110 at 3.[2]]  Pursuant to the warrants, law

---

[2] The government has filed the affidavit of DEA Task Force Officer John Ahnen, which was given in support of the 45 applications for search warrants, as an exhibit to its response brief.  [*See* Doc. 110-2.]  The government has also filed the search warrant for the iPad.  [*See* Doc. 110-3.]  The government represents that

4

enforcement searched the devices and made electronic copies of the information found as a result of the searches.  The government then returned the devices to Davis.  [*Id.*]  On August 11, 2015, the government provided Davis's counsel with two external hard devices containing data seized from the devices.  [*Id.* at 4, Doc. 110-4 (August 11, 2015 transmittal letter).]

After the May 2017 trial, the government extracted additional information from the cache of data seized from the devices.  [Doc. 110 at 4-5.]  According to the government's brief, the additional information came from password-protected backup files that had been in its possession since the search warrants were executed in 2014.  [*Id.*]

Davis argues that the government's post-trial search of the data was "per se unreasonable and required an additional warrant to conduct."  [Doc. 102 at 3.]  The government responds that the devices were searched pursuant to warrants issued by a federal magistrate judge, and that neither the Fourth Amendment nor Federal Rule of Criminal Procedure 41 imposes a specific time limit on the government's ability to review or analyze data that has been extracted from a device.  [Doc. 110

---

the remaining 44 search warrants are the same as to form, with the exception of the description of the item to be searched.  [*See* Doc. 110 at 3 n.1.]

at 5-8.]  The government further argues that the subsequent review of its digital copy of the data extracted from the devices does not interfere with Davis's possessory interests, as the government returned the devices to him several years ago.  [*Id.* at 8-9.]

The Court agrees with the government.  Federal Rule of Civil Procedure 41(e)(2)(B) states, in pertinent part, that a warrant for the seizure of electronic storage media or for the seizure or copying of electronically stored information authorizes a later review of the media or information consistent with the warrant, unless otherwise specified.  As the advisory committee notes explain, "[Rule 41(e)(2)(B)] acknowledges the need for a two-step process:  officers may seize or copy the entire storage medium and review it later to determine what electronically stored information falls within the scope of the warrant."  Fed. R. Crim. P. 41(e)(2) advisory committee's note to 2009 amendment; *see also United States v. Ilonzo*, No. 1:12-CR-276-SCJ-GGB, 2015 WL 5827598, at *22 (N.D. Ga. Oct. 6, 2015) (recognizing the fourteen-day limitation in executing a search warrant "does not apply to later off-site copying or review of electronically stored information"), *adopted*, at *3-4.

The warrants here authorized the seizure of data from the devices.  [*See* Doc. 110-3 at 2.]  The warrants imposed a fourteen-day time period during which agents could execute the warrants; however, there was no restriction as to when the government must complete its review of the seized data.  [*Id.*]  Nor is there any indication that the search of the seized data—either before or after Davis's trial—exceeded the scope of the warrants.  "Federal courts have generally not required a second warrant to search a properly seized computer where the evidence obtained in the search did not exceed the probable cause articulated in the original warrant." *Ilonzo*, 2015 WL 5827598, at *19 (quotations and citations omitted).  Davis points to no authority that stands for a contrary proposition.  Accordingly, the Court concludes that the government's further review of the data it had lawfully extracted pursuant to search warrants was lawful and that the data should not be suppressed. Accordingly, I **RECOMMEND** that the Motion to Suppress [Doc. 102] be **DENIED**.

### III.  Motion To Dismiss [103]

Davis moves to dismiss the superseding indictment in whole or in part on three grounds.  First, he moves to dismiss Count Four of the superseding indictment (the possession with intent to distribute charge) as it relates to AB-FUBINACA on

the grounds that the jury acquitted him on the charge of possession with intent to distribute AB-FUBINACA, and, therefore, the Double Jeopardy Clause of the Fifth Amendment bars re-prosecution on that charge.  Second, he moves to dismiss Count Two of the superseding indictment (the distribution charge) as it relates to AB-FUBINACA on the grounds that the government is collaterally estopped from prosecuting that charge due to his purported acquittal on the possession with intent to distribute relating to AB-FUBINACA.  Third, he argues that all newly-alleged distribution charges in the superseding indictment should be dismissed because the government unreasonably delayed in bringing the charges.

I first address the first and second arguments relating to double jeopardy and then address the third argument.

### A.    Double Jeopardy

The Double Jeopardy Clause of the Fifth Amendment provides that "[n]o person shall . . . be subject for the same offen[s]e to be twice put in jeopardy of life or limb."  U.S. Const. amend V.  "Specifically, the Double Jeopardy Clause protects against (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense."  *United States v. Votrobek*, 847 F.3d 1335, 1339

8

(11th Cir. 2017) (internal quotation marks omitted) (quoting *Brown v. Ohio*, 432 U.S. 161, 165 (1977)).  Claim preclusion, the doctrine that "instructs that a final judgment on the merits foreclose[es] successive litigation of the very same claim," is "essential to the Constitution's prohibition against successive criminal prosecutions." *Bravo-Fernandez v. United States*, 580 U.S. __, __, 137 S. Ct. 352, 357 (2016) (alteration in original) (quotation omitted).  A verdict of acquittal is "the last word on a criminal charge" and bars subsequent prosecution for the same offense.  *Id.* at 357-58 (quotation omitted).

The Double Jeopardy Clause also incorporates the principles of issue preclusion, also known as collateral estoppel.  *See Ashe v. Swenson*, 397 U.S. 436, 445-46 (1970); *see also Bravo-Fernandez*, 137 S. Ct. at 356 n.1.  The doctrine of issue preclusion means that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Bravo-Fernandez*, 137 S. Ct. at 358 (citing *Ashe*, 397 U.S. at 443).  "To decipher what a jury has necessarily decided, . . . courts should 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than

that which the defendant seeks to foreclose from consideration.'" *Yeager v. United States*, 557 U.S. 110, 119–20 (2009) (quoting *Ashe*, 397 U.S. at 444).  Such an inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Id.* at 120 (quoting *Ashe*, 397 U.S. at 444); *see also Bravo-Fernandez*, 137 S. Ct. at 362 (instructing that courts should make "a practical appraisal based on the complete record of the prior proceeding" in determining the potential preclusive effect of a prior finding).  The burden is on the defendant to demonstrate that a jury necessarily resolved a fact in his or her favor "by a valid and final judgment of acquittal." *Id.* at 363, 365.

### 1.   Count Four of the Superseding Indictment Is Not Subject to Dismissal on Double Jeopardy Grounds.

#### a.   The Trial Evidence and Jury Instructions as to Count Two

At trial, the government presented evidence that Davis sold synthetic cannabinoids, known as "spice," through his website, beginning in 2009 or 2010. (Tr. 168, 311.)  Davis later told investigators that, in the beginning, he did not know what substances were in his products and supposed that some of them were illegal. (Tr. 311.)  He distributed the products anyway.  (*Id.*)

Later, as synthetic cannabinoids were banned in various jurisdictions, Davis made an effort to sell only products that had not been made unlawful.  (*E.g.*, Tr.

10

200-10.)  In 2011, for example, he sent a text message stating, "After everything is banned, I'll just keep selling [products] with no chem squirted on them, all natural, lol."  (Tr. 202.)  He continued to sell products marketed as spice, however.  In August 2012, Davis told his mother, who helped him run the business, that the business was not "taking orders anymore for anything but the kratom-based products.[3]  No chemicals anymore.  They are all illegal."  (Tr. 211.)

At some point in 2011, Davis began obtaining his products from and individual named Marlon Beam.  (*See* Tr. 200, 205.)  In June 2013, Davis received a product from Beam that made him feel "drunk."  (Tr. 212.)  Regarding a June 2013 batch, he stated, "I can't believe this [product has] no chems."  (*Id.*)  In August 2013, Beam encouraged Davis to purchase a supply of AB-FUBINACA, and Davis refused, stating, "I don't want chems in my [products.]"  (Tr. 215.)

In 2013, investigators were alerted to the fact that Davis was distributing Schedule I synthetic cannabinoids after a parcel of spice intended for one of Davis's customers was misdelivered, and the recipient called the police.  (Tr. 46-60.)  Over a period of several months in late 2013 and early 2014, undercover investigators

---

[3] Kratom is a plant-based substance that, as of the time of the trial, had not been added to Schedule I.  (Tr. 325-26.)

bought products through Davis's website.  (Tr. 88-31.)  The product obtained during the first undercover purchase did not contain any controlled substance.  (Tr. 108-09.)  Products received after subsequent undercover purchases, however, contained Schedule I substances.  (Tr. 120-31.)

The three synthetic cannabinoids at issue in this case were added to Schedule I in May 2013 (AKB48) and February 2014 (PB-22 and AB-FUBINACA).  (Tr. 109, 119.)  On May 1, 2014, investigators raided Davis's townhouse and his mother's house, where they seized a large quantity of plant material that had been treated with AKB48 and AB-FUBINACA.  (Tr. 138-53, 292, 296-304.)

Davis argued to the jury that he thought he was operating a legitimate business but was unwittingly distributing Beam's "laced" product.  (Tr. 447-50.) There was no dispute that Davis possessed and distributed the substances during the course of his business; rather, the main question for the jury was his intent to possess a controlled substance.

The jury was instructed, in relevant part, as follows:

> Count Two, controlled substances, possession with intent to distribute.  As I previously stated, it is a federal crime for anyone to possess a controlled substance with intent to distribute it.  AB-FUBINACA and AKB48 are controlled substances.

12

With regard to Count Two, the defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt: One, the defendant knowingly possessed a mixture and substance containing a detectable amount of AB-FUBINACA or AKB48; and two, the defendant intended to distribute a mixture and substance containing a detectable amount of AB-FUBINACA or AKB48.

To intend to distribute is to plan to deliver possession of a controlled substance to someone else, even if nothing of value is exchanged.

You may find the defendant guilty even if the act involved only one of the controlled substances, that is, of a mixture and substance containing a detectable amount of AB-FUBINACA or AKB48.

***If you find the defendant guilty of Count Two, you must also unanimously agree on the controlled substance or substances that were involved.***

. . .

[T]he government does not have to prove that the defendant had knowledge of the particular controlled substance involved, only that the defendant knew that he . . . possessed with intent to distribute . . . a controlled substance.

If a defendant's knowledge of a fact is an essential part of a crime, it is enough that the defendant was aware of a high probability that the fact existed, unless the defendant actually believed the fact did not exist.

Deliberate avoidance of positive knowledge, which is the equivalent of knowledge, occurs, for example, if a defendant possesses a package and believes it contains a controlled substance

13

but deliberately avoids learning that it contains the controlled substance so he or she can deny knowledge of the package's contents.

So you may find that a defendant knew about the possession of a controlled substance if you determine beyond a reasonable doubt that the defendant, one, actually knew about the controlled substance; or, two, had every reason to know but deliberately closed his eyes.

But I must emphasize that negligence, carelessness, or foolishness isn't enough to prove that the defendant knew about the possession of the controlled substance.

Further, everyone is presumed to know the law. And ignorance of the law is not a defense to the commission of a crime.

(Tr. 428-31.)

### b.    The Jury's Verdict

After deliberating, the jury found Davis guilty only of Count Two, possession with intent to distribute Schedule I controlled substances. (Tr. 504.) On the verdict form, the jury indicated that Davis possessed with intent to distribute AKB48 by marking an X next to AKB48 but left a line next to AB-FUBINACA blank. [Doc. 62 at 2.] The verdict form provides in relevant part as follows:

14

2.   **COUNT TWO**:

a.   We, the Jury, unanimously find the Defendant BRUCE SCOTT DAVIS

     _X_ GUILTY        _____ NOT GUILTY

of the offense charged in Count Two of the indictment.

**If you find the Defendant BRUCE SCOTT DAVIS not guilty, skip the question in paragraph 2(b) and proceed to paragraph 3.**

b.   We, the Jury, having found Defendant BRUCE SCOTT DAVIS guilty of the offense charged in Count Two, further find with respect to that Count that he possessed with the intent to distribute the following Controlled Substance(s):

**(CHOOSE ONE or BOTH Controlled Substances)**

_____ AB-FUBINACA, a Schedule I Controlled Substance (as of February 10, 2014)
_X_ AKB48, a Schedule I Controlled Substance (as of May 16, 2013)

[Doc. 62 at 2.]

The parties disagree on how the Court should interpret the jury's verdict and answer to the question about drug type. Davis argues that, by not marking the line next to AB-FUBINACA, the jury acquitted him of possession with intent to distribute AB-FUBINACA. [Doc. 103 at 5-8.] The government contends that the jury's decision not to mark the line next to AB-FUBINACA does not operate as an acquittal because (1) specific drug type is not an element in this case; and (2) the jury form did not require the jury to make a unanimous finding as to each of the controlled substances. [Doc. 111 at 8-9.]

15

### c.     Specific Drug Type Is Not an Element of Count Two.

Turning first to the government's argument that drug type is not an element of the offense, the Eleventh Circuit has not addressed the exact question at issue in this case.  In other contexts, the Circuit has held that specific drug type is not an element of a § 841(a) offense where the applicable sentencing provision is § 841(b)(1)(C)'s catchall 20-year statutory maximum for offenses involving Schedule I and II drugs.  *E.g.*, *United States v. Sanders*, 668 F.3d 1298, 1309-10 (11th Cir. 2012) (explaining, in a constructive amendment case, that specific drug type is not an element of a § 841(a) offense subject only to the generic penalty in § 841(b)(1)(C)).

Most circuit courts have held that the government can prosecute a defendant's simultaneous possession of different controlled substances as separate offenses, and that a defendant may be subjected to multiple punishments for simultaneous possession of different controlled substances.  *See United States v. Davis*, 656 F.2d 153 (5th Cir. Unit B. Sept. 1981) (discussing how, under a previous iteration of the sentencing scheme in § 841(b), Congress intended to allow multiple sentencing for § 841(a) offenses involving simultaneous possession of different controlled substances, regardless of schedule); *see also United States v. Vargas-*

16

*Castillo*, 329 F.3d 715, 720 (9th Cir. 2003) (collecting cases from the First, Second, Fourth, Fifth, Sixth, Seventh, and Tenth Circuits and holding that indictments charging multiple § 841(a) offenses involving different controlled substances were not multiplicitous in violation of the Double Jeopardy Clause).  But the Court is not aware of any case ***requiring*** that simultaneous possession of multiple controlled substances be charged separately, where the statutory penalties for the controlled substances are the same.  *Cf. United States v. Danner*, 344 F. App'x 495, 498-99 (11th Cir. 2009) (citing *United States v. Allen*, 302 F.3d 1260 (11th Cir. 2002), and holding that a sentencing error occurred where a defendant was convicted, by general verdict, of a single count of possession of multiple controlled substances, the statutory maximum for the controlled substances differed, and the defendant was not sentenced under the lowest statutory maximum).  It is merely permitted, if the government is seeking multiple punishments for the defendant's conduct.  Here, the government is not seeking multiple punishments for the possession offense, so it has not charged each specific drug type as a separate offense.

In short, the question in this case—whether specific drug type is an element of a violation of § 841(a) involving multiple controlled substances but charged under the generic sentencing provision in § 841(b)(1)(C)—turns on how the

government charges the offense.  As the Court reads the original indictment in this case, there was a single charge of possession with intent to distribute a Schedule I controlled substance, so each specific drug type is not an element of Count Two. Davis's double jeopardy argument therefore fails as a matter of law.  Simply put, there was no separate possession-of-AB-FUBINACA charge; Davis was found guilty of possession of a Schedule I controlled substance, and that is the end of the inquiry.[4]

That said, the Court is mindful of the fact that the Eleventh Circuit has not addressed the precise issue here.  Furthermore, the government put the issue of each specific drug type to the jury in the original trial, even though the government maintains that specific drug type is not an element.  Thus, the Court will also

---

[4] For the same reasons that specific drug type is not an element of Count Two of the original indictment, it is not an element of Count Two of the superseding indictment, a distribution offense charged under § 841(a) and the generic Schedule I and II sentencing provision in § 841(b)(1)(C).  Davis therefore cannot rely on issue preclusion as a bar to Count Two of the superseding indictment because issue preclusion applies only where the previously determined fact is an "essential element" of the newly charged offense. *See United States v. Ohayon*, 483 F.3d 1286, 1294 (11th Cir. 2007) (holding that, for a defendant to show he is entitled to issue preclusion, the fact in question must have been "necessarily determined" during the first trial, and the previously determined fact must be an "essential element" of the second offense).

18

address the more fact-intensive question of understanding the jury's verdict on Count Two.

### d. The Jury's Verdict on Count Two Was Not an Acquittal.

The circumstances of this case are similar to those confronted by the Eighth Circuit in *United States v. Mitchell*, 476 F.3d 539 (8th Cir.2007).  The defendant in that case, Mitchell, was charged with, among other things, submitting a false declaration in a bankruptcy petition in violation of 18 U.S.C. § 152(3).  476 F.3d at 541.  A jury found Mitchell guilty of that count, but the jury's responses to a special verdict form were internally inconsistent.  *Id.* at 542.  The verdict form posed three interrogatories with respect to the charge.  First, the jury was asked to identify the specific false representations that Mitchell made by placing a check mark next to any of three individual representations.  The jury placed a check next to two of the three individual representations was false.  Second, the jury was asked to indicate by "yes" or "no" answer if it "unanimously [found] beyond a reasonable doubt that one or more of the false declarations, certificate, verification and statement under penalty of perjury were 'material' matters, that is, had a natural tendency to influence, or were capable of influencing, the outcome of the bankruptcy proceeding[.]"  *Id.* at 542 (alterations in original).  In response, the jury

19

indicated "no."  Because the verdict form instructed the jury to answer the third

interrogatory only if they answered the second question in the affirmative, the jury

did not answer the third interrogatory.  *Id.*

Mitchell moved for a new trial on the basis that the jury did not find that his

false statements were material.  *Mitchell*, 476 F.3d at 542-43.  The district court

granted the motion for new trial due to the inconsistency within the jury's responses

on the special verdict.  *Id.* at 543.  Mitchell then moved to dismiss the charge on

double-jeopardy grounds, which the district court denied.  *Id.*

The Eighth Circuit affirmed the district court's denial of the motion to

dismiss.  *Mitchell*, 476 F.3d at 544-45.  The court began its analysis by noting that

double jeopardy is triggered if a jury acquits a defendant or makes a finding of fact

beyond a reasonable doubt that would be fatal to the government's case.  *Id.* at 544

(citing *Ashe*, 397 U.S. at 442-43).  The court then reasoned that there was no

acquittal because the jury found Mitchell guilty of violating § 152(3).  Nor did the

jury conclude beyond a reasonable doubt that the representations were not material.

The Court explained:

> The response to the interrogatory does not suggest that
> the jury made a unanimous factual finding with respect
> to the materiality of the misstatements.  The finding
> means one of two things: either (1) the jury unanimously

20

> found the statements immaterial, or (2) some jurors
> found the statements material and some jurors found the
> statements immaterial.   In the former case, jeopardy
> would attach, and in the latter case jeopardy would not
> attach.   The language of the interrogatory itself is not
> susceptible to discerning just what, specifically, the jury
> found; we know merely that it was unable to
> unanimously agree beyond a reasonable doubt that the
> statements were material.   There is nothing in the
> language that suggests the jury has found beyond a
> reasonable doubt that the statements were immaterial.

*Id.* at 545.

The Eighth Circuit's reasoning in *Mitchell* is persuasive in interpreting the verdict form at issue in Davis's case.  The jury's decision not to mark the line next to AB-FUBINACA is subject to two possible interpretations:   (1) the jury unanimously found that Davis did not possess with intent to distribute AB-FUBINACA; or (2) the jury was unable to reach unanimity with respect to that specific finding.   The instructions given to the jury do not compel the first interpretation.  *See Blueford v. Arkansas*, 566 U.S. 599, 606 (2012) ("A jury is presumed to follow its instructions.").   The jury was instructed that, if it found Davis guilty on Count Two, it must be in unanimous agreement on the substance or substances ***involved*** in the offense; there was no instruction that the jury must be unanimous if one or more jurors found that one of the substances was ***not involved*** in the offense.   Moreover, the verdict form requires that the jury indicate only which

21

substance or substances were involved in the offense.  It provides no way for the

jury to indicate unanimous agreement that a substance was not involved.  [Doc. 62

at 2.]  In fact, there is no reference to unanimity at all in the jury question as to drug

type.[5]  [*Id.*]

In sum, the Court concludes that the jury's finding with respect to Davis's

intent to possess AB-FUBINACA was ambiguous.  There is no indication that the

jury was unanimous in finding that AB-FUBINACA was not involved in the

offense, as it is just as likely (if not more likely) that the jurors could not agree on

Davis's intent to possess AB-FUBINACA.

Having determined that the jury's specific finding with respect to AB-

FUBINACA was ambiguous, I turn to Davis's argument that Count Four of the

superseding indictment is barred by the Double Jeopardy Clause.  He argues that

both Count Two of the original indictment and Count Four of the superseding

---

[5] A jury's negative response or non-response to a special interrogatory is not always ambiguous.  To understand the jury's response, courts look to the precise question asked of the jury and the instructions given the jury.  *Compare Mitchell*, 476 F.3d at 544-45 (finding the jury's response to a special interrogatory ambiguous where the jury indicated it could not "find unanimously beyond a reasonable doubt" that statements were material), *with United States v. Lucarelli*, 490 F. Supp. 2d 295, 296-99 & n.4 (D. Conn. 2007) (finding that the jury's "no" response to a special interrogatory was not ambiguous where the interrogatory asked a simple "yes/no" question without any reference to unanimity).

indictment charge him with possession with intent to distribute AB-FUBINACA (among other substances), and that the jury acquitted him of the charge as it relates to AB-FUBINACA in the first trial.  [Doc. 103 at 5-6.]  The government responds that the jury convicted Davis of Count Two, and jeopardy has not attached on that count because the jury made no finding with respect to AB-FUBINACA.[6]  [Doc. 111 at 8-9.]

Davis misapprehends the jury's verdict.  He was convicted of Count Two, and the jury did not make an unambiguous, unanimous finding that he did not intentionally possess AB-FUBINACA.  In a double jeopardy analysis, "a hung jury is [not] the equivalent of an acquittal."  *Richardson v. United States*, 468 U.S. 317, 325 (1984).  Because there was no acquittal of possession with intent to distribute AB-FUBINACA, Davis's argument that Count Four of the superseding indictment must be dismissed with respect to AB-FUBINACA is without merit.  *See Bravo-Fernandez*, 137 S. Ct. at 357-58; *Votrobek*, 847 F.3d at 1339.

---

[6] The government also argues at some length that Davis's acquittal on Count One, the conspiracy charge in the original indictment, does not bar his retrial on a substantive possession or distribution charge in the superseding indictment.  [Doc. 111 at 5-8.]  Davis does not raise that argument in his motion or reply, so the Court will not address it here.

### 2.  Count Two of the Superseding Indictment Is Not Subject to Dismissal on Issue Preclusion Grounds.

Davis next argues that the government is precluded from prosecuting him for distribution of AB-FUBINACA, as alleged in Count Two of the superseding indictment, because the jury necessarily found, in its verdict on Count Two of the original indictment, that he did not have the requisite intent to possess AB-FUBINACA.  [Doc. 103 at 6-8.]  Chiefly, Davis relies on *United States v. Ohayon*, 483 F.3d 1281 (11th Cir. 2007).

In *Ohayon*, the defendant was acquitted of attempt to possess with intent to distribute a controlled substance, but the jury was unable to reach a verdict on a charge of conspiracy to possess with intent to distribute the same substance.  483 F.3d at 1282.  The Eleventh Circuit held that retrial on the conspiracy charge was barred by collateral estoppel under a two part inquiry:  first, the court must discern what facts were necessarily determined in the acquittal during the first trial; and second, the court must determine whether the previously determined facts are an "essential element of the second offense."  *Id.* at 1286 (quotation omitted); *see also id.* at 1286-94.

Davis's argument fails at the first step of the inquiry because there was no acquittal on Count Two of the original indictment.  It is his burden to show that a

fact was "necessarily determined" during his previous trial, and as the Court has explained, the jury's response to the drug type interrogatory was ambiguous with respect to AB-FUBINACA.  *See Ohayon*, 483 F.3d at 1286; *see also Bravo-Fernandez*, 137 S. Ct. at 363, 365.  His reliance on issue preclusion is therefore misplaced, and Count Two of the superseding indictment is not subject to dismissal.

**B.   The Government Did Not Unreasonably Delay in Bringing New Charges Against Davis.**

Finally, Davis argues that the Court should dismiss all distribution charges against him because the government unreasonably delayed in bringing those charges.  [Doc. 103 at 8-10.]  He notes that the government waited three years after the May 2014 raids on his house and his mother's house and 14 months after the original indictment to bring new charges, and only did so after he was acquitted of other charges.  [*Id.*]  Furthermore, the government sought stipulations from Davis relating to the distribution of controlled substances, which afforded the government a "dry run" of charges without having to submit those issues to the jury and avoiding potential double jeopardy or collateral estoppel concerns.  [*Id.* at 9.]  He essentially argues that the government's delay was in bad faith.  [*See id.* at 8-9.]

The government responds it did not bring charges after the statute of limitations expired, and its delay in seeking the superseding indictment did not

violate Davis's statutory or constitutional pretrial rights to a speedy trial.  [Doc. 111 at 10-12.]

The Court does not read Davis's argument as an assertion that the limitations period or the statutory speedy trial clock has run out.  Rather, Davis's argument is that he faces unfair prejudice of a constitutional dimension because the government waited so long to bring the distribution charges against him.  In advancing that argument, he relies on the Sixth Amendment's guarantee that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial."  U.S. Const. amend. VI.  To determine whether a defendant's right to a speedy trial has been violated, courts consider (1) the threshold question of the length of the delay, (2) the government's reasons for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the prejudice to the defendant.  *United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003) (citing *Barker v. Wingo*, 407 U.S. 514, 530-32 (1972)).  "[A]n unreasonable delay between formal accusation and trial threatens to produce more than one sort of harm, including 'oppressive pretrial incarceration,' 'anxiety and concern of the accused,' and 'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of

exculpatory evidence." *Doggett v. United States*, 505 U.S. 647, 654 (1992) (quoting *Barker*, 407 U.S. at 532).

Considering the *Barker* factors, the Court assumes that the delay of over one year in superseding the indictment was sufficiently long to satisfy the threshold factor. *See United States v. Villarreal*, 613 F.3d 1344, 1350 (11th Cir. 2010). As to the second factor, the government has offered no explanation for the delay. [*See* Doc. 111 at 10-12]. The third factor is of no help to Davis, because although he is asserting that he has been prejudiced by delay in this case, he is not actually seeking a speedy trial. Nor did he raise the delay issue promptly after the superseding indictment was filed.

In any event, examining the fourth factor, it is clear that Davis has not been prejudiced by the delay. He remains free on bond, and he awaits retrial on one charge from the original indictment, regardless of the new charges. Most significantly, the addition of the distribution charges to the superseding indictment does not prejudice or even change Davis's defense. His defense to the charges in the original indictment was that he thought he was operating a legitimate business but was not aware that he was distributing controlled substances. Nothing

27

precludes him from arguing that defense again on retrial.  Further, it does not appear that his defense will be damaged by fading memories or unavailability of witnesses.

Although Davis relies primarily on *Barker*, he also cites the Fifth Amendment in arguing that he has been prejudiced by the government's delay in seeking a superseding indictment.  To the extent that he means that his due process rights were violated by pre-indictment delay, he must "establish both (1) that the delay actually prejudiced his defense and (2) that it resulted from a deliberate design by the government to gain a tactical advantage over him."  *United States v. Farias*, 836 F.3d 1315, 1325 (11th Cir. 2016).  As explained above, he cannot show that his defense has been prejudiced by the government's delay in seeking a superseding indictment.

To the extent that, by citing the Fifth Amendment, Davis asserts that the superseding indictment is the product of prosecutorial vindictiveness, in violation of his right to due process [*see* Doc. 103 at 9], there is no presumption of prosecutorial vindictiveness in this case because the Court did not order a new trial based on Davis's assertion of a protected right, such as the right to appeal.  *See United States v. Kendrick*, 682 F.3d 974, 982-83 (11th Cir. 2012) (no presumption of vindictiveness for a superseding indictment obtained after an acquittal); *United*

*States v. Mays*, 738 F.2d 1188, 1190 (11th Cir. 1984) (no presumption of vindictiveness for a superseding indictment obtained after defendant moved for, and was granted, a mistrial when jury could not agree on a verdict).  In fact, the parties jointly moved for a new trial after discovering that the jurors were inadvertently given, and considered in their deliberations, documents that had not been admitted as evidence and that were prejudicial to Davis.  Nor has Davis pointed to any conduct that rises to the level of actual vindictiveness.  *See United States v. Barner*, 441 F.3d 1310, 1322 (11th Cir. 2006) (noting that a showing of actual vindictiveness requires animus).  Davis claims that the government used the first trial as a "dry run," but the Court highly doubts that the government anticipated that the first trial would end in a mistrial.

In sum, Davis's double jeopardy and issue preclusion arguments are without merit, and the distribution charges in the superseding indictment are not subject to dismissal based on the government's delay in seeking a superseding indictment or other pretrial delay.  I therefore **RECOMMEND** that the Motion to Dismiss [Doc. 103] be **DENIED**.

## IV.    Conclusion

For the foregoing reasons, it is **RECOMMENDED** that the Motion to Suppress [Doc. 102] and the Motion to Dismiss [Doc. 103] be **DENIED**.

There are no pending matters before me, and I am aware of no problems relating to the scheduling of this case for trial.  It is therefore **ORDERED AND ADJUDGED** that this action be declared **READY FOR TRIAL.**

IT IS SO RECOMMENDED and CERTIFIED, this 6th day of March, 2018.

_____
JOHN K. LARKINS III
United States Magistrate Judge